UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| GEORGE TYRONE DUNLAP, JR., | ) | Case No.: 2:06-cv-00800-RLH-RJJ |
| Plaintiff, | ) ) | **O R D E R** |
| vs. | ) ) | (Motion to Dismiss–#33 & Motion to Strike-#56) |
| SHERIFF BILL YOUNG; OFFICER J. RICHTER; OFFICER B. PAUL; ALEX GONZALES; M. ROBERTSON; *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

      Before the Court is Defendants Sheriff Bill Young ("Young"), Officer J. Richter ("Richter"), Officer B. Paul ("Paul"), Alex Gonzales ("Gonzales"), and M. Robertson's ("Robertson") (collectively "Defendants") **Motion to Dismiss** (#33), filed January 3, 2007, and reasserted (#48) on February 14, 2007. The Court has also considered Plaintiff George Tyrone Dunlap, Jr.'s ("Plaintiff") Opposition (#50), filed February 15, 2007, and Defendants' Reply (#42), filed February 6, 2007.

      Plaintiff has also filed a second Opposition (#53), filed February 23, 2007, which Defendants have **Moved to Strike** (#56) on March 9, 2007.

///

///

1

**BACKGROUND**

Plaintiff, appearing pro se, is a Nevada state prisoner alleging that his constitutional rights were violated during his incarceration at the Clark County Detention Center ("CCDC"). On October 7, 2005, Plaintiff was classified as a "Strict Protective Custody" inmate, meaning that he was not to have contact with other inmates because of his service as a witness for the state in a double homicide case. Plaintiff asserts that Defendant Gonzales, an officer with the Las Vegas Metropolitan Police Department, advised Plaintiff that he would place Plaintiff in a Protective Custody unit. Instead, Gonzales placed the Plaintiff in "Disciplinary Housing," which allegedly housed rival gang members who wanted to physically harm Plaintiff. In response, Plaintiff wrote multiple letters to both Gonzales and Defendant Young advising them that his life was in critical danger due to the location in which he was housed. Plaintiff also asserts that Chief Deputy District Attorney, Lisa Luzaich Rego ("Rego"), spoke with Gonzales, who allegedly assured Rego that Plaintiff would be moved to a safer location. However, CCDC officials did not move Plaintiff to a different location.

Thereafter, on October 11 and 12, 2005, Defendants Richter and Paul were allegedly advised of Plaintiff's housing status and his risk of being physically assaulted by other inmates. Plaintiff asserts that on October 17, 2005, Richter released a fellow inmate, permitted the inmate to construct weapons, and advised the inmate that he would open Plaintiff's cell door. According to Plaintiff, Richter then opened Plaintiff's cell door and allowed the other inmate to physically assault Plaintiff. As a result of the attack, Plaintiff allegedly suffered severe physical pain due to a piece of "broken jailhouse shank" lodged in his neck. In addition, Plaintiff asserts that his head and neck were severely swollen, his left eye was swollen shut, and he was bruised "from head to toe."

Despite these injuries, Richter and Paul allegedly denied Plaintiff immediate medical attention and, instead, attempted to cover up the beating. Plaintiff alleges that Richter and Paul attempted to dissuade him from filing a grievance by bribing him with extra privileges. Plaintiff

asserts that after he refused the bribes, Richter and Paul threatened him with physical violence if he insisted on going forward with the grievance process. According to Plaintiff, Richter and Paul waited nearly an hour before taking Plaintiff to see a nurse. Plaintiff states that he spoke with Defendant Robertson in response to the actions of the officers, but she failed to contact Internal Affairs regarding the incident and attempted to discourage Plaintiff from filing a grievance against the officers. Thereafter, Plaintiff brought the instant § 1983 action for the alleged violation of his constitutional rights.

## DISCUSSION

### I. Motion to Strike

Defendants moved to strike Plaintiff's second Opposition. Local Rule 7-2 provides that in response to a motion, there shall be one response. *See* LR 7-2. In addition, Federal Rule of Civil Procedure 12(f) allows parties to file a motion to strike filings. *See* Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid the expenditure of time and resources litigating "spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Additionally, Rule 12(f) allows the Court to strike any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Here, Plaintiff filed an Opposition to the Motion to Dismiss. Thereafter, Plaintiff filed a second Opposition to the Motion to Dismiss that does not raise any different arguments or defenses to Defendants' Motion to Dismiss. The second Opposition is redundant and immaterial; therefore, Defendants' Motion to Strike is granted.

### II. Motion to Dismiss

Plaintiff asserts § 1983 claims against Richter, Paul, Young, Gonzales and Robertson for allegedly violating his Eighth Amendment right against cruel and unusual punishment. In addition, Plaintiff asserts a claim against Richter and Paul for violation of his Fifth and Fourteenth Amendment Due Process rights.

///

AO 72
(Rev. 8/82)

### A. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Yamaguchi v. U.S. Dept. of the Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). All factual allegations set forth in the complaint "are taken as true and construed in the light most favorable to [p]laintiffs." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988).

### B. Section 1983 Analysis

To maintain a successful § 1983 action, a plaintiff must establish the following two elements: (1) the conduct complained of must have been committed by an individual acting under the color of law; and (2) the conduct must have subjected the plaintiff to a deprivation of constitutional rights. *Jones v. Community Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). Here, there is no dispute that the first element is satisfied. At issue in the present motion is Plaintiff's assertion that Defendants violated his Fifth, Eighth, and Fourteenth Amendment rights.

#### 1. Eighth Amendment Claim

The United States Constitution imposes several duties on prison officials, one of which is to take reasonable measures to guarantee the safety and welfare of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Id.* at 833 (citations omitted). When an inmate alleges a constitutional violation against prison officials, the appropriate inquiry is whether the officials exhibited "deliberate indifference" that would amount to "wanton and

1  unnecessary infliction of pain." *Hudson v. McMillan*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429
2  U.S. 97, 103-04 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).[1]  In addition, a
3  violation of a prisoner's constitutional rights also occurs when prison officials are deliberately
4  indifferent to a prisoner's medical needs. *Toguchi*, 391 F.3d at 1057.  Prison officials are
5  deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or
6  intentionally interfere with medical treatment. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.
7  2002).

8  The deliberate indifference standard involves both an objective and subjective
9  component. *Farmer*, 511 U.S. at 834.  The objective component is satisfied when the alleged
10 constitutional deprivation is "sufficiently serious."[2] *Id*.  For a claim based on a failure to prevent
11 harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of
12 serious harm. *Id*.  The subjective component is met when a prison official "knows of and
13 disregards an excessive risk to inmate health or safety." *Id*. at 837.  The official must "both be
14 aware of facts from which the inference could be drawn that a substantial risk of serious harm
15 exists, and he must also draw the inference." *Id*.  No matter how severe the risk of harm, a prison
16 official has not violated a prisoner's constitutional rights if he "should have been aware of the risk,
17 but was not," since the focus is on what the defendant's attitude actually was. *Gibson v. County of*
18 *Washoe, Nev.*, 290 F.3d 1175, 1188 (9th Cir. 2002).

19 A prisoner seeking to recover damages under § 1983 for an Eighth Amendment
20 violation must prove: (1) that the specific prison official, in acting or failing to act, was

---

[1] Pretrial detainees are also entitled to reasonable protection from harm by fellow detainees or other inmates. *See Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991). In contrast to the constitutional rights of prisoners, a pretrial detainee's right to be free from harm is grounded in the Fourteenth Amendment, but courts borrow from Eighth Amendment jurisprudence when analyzing the rights of such detainees. *Id*. at 1443. It is unclear whether Plaintiff was a pretrial detainee or prisoner at the time of the alleged actions, but the distinction is irrelevant for purposes of this motion.

[2] For purposes of this Motion to Dismiss, Defendants do not contend that their alleged actions would not be considered "sufficiently serious."

AO 72
(Rev. 8/82)

deliberately indifferent to the mandates of the Eighth Amendment, and (2) that this indifference was the actual and proximate cause of the deprivation of the inmate's Eighth Amendment right to be free from cruel and unusual punishment. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). In other words, liability under § 1983 arises only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Furthermore, there is no respondeat superior liability under § 1983. *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984). In fact, a supervisor can only be liable for violations caused by subordinates if the "supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

Given the foregoing legal principles, the Court will consider separately Plaintiff's Eighth Amendment claims against Defendants Richter, Paul, Young, Gonzales, and Robertson.

### a. Defendant Richter

Plaintiff alleges that Richter violated his Eighth Amendment rights because he was fully advised of Plaintiff's housing status and high risk of physical assault at the hands of other inmates. Despite this knowledge, Richter allegedly released a dangerous inmate from his cell, advised the inmate that Richter would open the Plaintiff's cell door, and allowed the inmate to construct deadly weapons. Thereafter, Richter allegedly opened Plaintiff's cell door and allowed the inmate to physically assault the Plaintiff. If proven true, Richter's alleged actions could support a finding that Richter exhibited deliberate indifference to his constitutional duty to protect Plaintiff from violence at the hands of other inmates. *See Farmer*, 511 U.S. at 833 (holding that prison officials have a duty to protect prisoners from violence at the hands of other prisoners). Therefore, the Court finds that Plaintiff has sufficiently stated a § 1983 claim against Richter for violation of his Eighth Amendment rights.

///

///

AO 72
(Rev. 8/82)

### b. Defendant Paul

Plaintiff alleges that Paul is liable because he was also aware of Plaintiff's housing status and high risk of physical assault at the hands of other inmates. Though not completely clear from the Second Amended Complaint, Plaintiff appears to allege that Paul was on duty at the time of Plaintiff's physical assault and that Paul somehow assisted Richter in giving the inmate access to Plaintiff's cell. Additionally, after the attack, Paul allegedly ignored Plaintiff's need for immediate medical attention and joined Richter in attempting to dissuade Plaintiff from filing a grievance, bribing Plaintiff with extra privileges, and physically threatening the Plaintiff if he failed to comply. The alleged actions could support a finding that Paul violated Plaintiff's constitutional rights by failing to show due care for Plaintiff's medical needs and delaying Plaintiff's medical treatment. *See Toguchi*, 391 F.3d at 1057; *Hallett*, 296 F.3d at 744. Therefore, construing Plaintiff's allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has stated a § 1983 claim against Paul for violation of his Eighth Amendment rights.

### c. Defendant Young

Plaintiff asserts that Young is liable because he failed to respond to Plaintiff's written requests to be moved to a safer location. At the time Plaintiff was physically assaulted, Young was the Sheriff of Clark County and was in charge of the county's detention facilities. Plaintiff allegedly wrote letters to Young advising him that Plaintiff's life was in danger due to the location in which he was housed. However, Plaintiff received no response from Young and his housing status remained the same. According to Plaintiff, Young "willfully disregarded a severe risk of harm, and denied Plaintiff his right to protection." (Opp'n p.4 ¶¶ 25-28.)

However, there is no respondeat superior liability under § 1983. *Ybarra*, 723 F.2d at 680-81. In the absence of such liability, a supervisor can only be liable for the actions of subordinates if he or she played a personal role in the constitutional violation or knew of the violations and failed to act to prevent them. *Taylor*, 880 F.2d at 1045. To that end, the failure to respond to a prison grievance does not state a claim for which relief can be granted. *See Mann v.*

7

*Adams*, 855 F.2d 639 (9th Cir. 1988) (holding that there is no legitimate claim of entitlement to a prison grievance procedure). Therefore, because Plaintiff has failed to allege any personal participation on the part of Young in the alleged constitutional violation, Plaintiff's § 1983 claim against Young must be dismissed.

### d. Defendant Gonzales

Plaintiff asserts that Gonzales is liable because he was aware of and disregarded an excessive risk to Plaintiff's safety. Plaintiff has alleged that Gonzales advised him that he would be placed in "Strict Protective Custody" at the CCDC because of Plaintiff's service as a witness for the state in a double homicide case. However, Plaintiff contends that he was actually placed in "Disciplinary Housing," which allegedly housed gang members that wanted to physically harm Plaintiff. Due to Plaintiff not being placed in "Strict Protective Custody" as allegedly promised by Gonzales, Plaintiff advised Gonzales of a perceived risk of serious physical harm, but neither Gonzales nor any other CCDC official moved Plaintiff to a different location. Additionally, Gonzales allegedly failed to move Plaintiff to a safer location after assuring Rego that he would do so. Although Plaintiff does not allege that Gonzales personally participated in the physical assault, Plaintiff does allege that Gonzales knew of and disregarded an excessive risk to Plaintiff's health and safety. Taking these allegations as true, Plaintiff has sufficiently alleged that Gonzales was deliberately indifferent to Plaintiff's safety and, therefore, has stated a valid § 1983 cause of action against Gonzales for violation of his Eighth Amendment rights. *See Farmer*, 511 U.S. at 837.

### e. Defendant Robertson

Plaintiff's Second Amended Complaint and Opposition are silent as to any personal participation or knowledge on Robertson's behalf prior to the physical assault. In his Opposition, Plaintiff alleges that Robertson failed to contact Internal Affairs regarding the incident involving Richter and Paul and tried to discourage Plaintiff from filing grievances against the officers. However, as the Court previously noted, a prison official's failure to respond to a prison grievance or complaint does not state a § 1983 claim for which relief can be granted because there is no

legitimate claim of constitutional entitlement to a prison grievance procedure. *See Mann v. Adams*, 855 F.2d 639 (9th Cir. 1988). Because Plaintiff has failed to allege any personal participation on the part of Robertson and his allegations regarding Robertson's failure to contact Internal Affairs do not state a § 1983 claim, his claims against Robertson must be dismissed.

### 2. Fifth and Fourteenth Amendment Claim

Plaintiff appears to have alleged a cause of action for conspiracy against Richter and Paul for conspiring to deprive him of his Due Process rights under the Fifth and Fourteenth Amendments. Specifically, Plaintiff asserts that Richter and Paul conspired to deprive him of his life by allowing another inmate to physically assault Plaintiff. To establish a claim for conspiracy to deprive a person of his or her civil rights, a plaintiff must prove that a meeting of the minds occurred between two or more persons to deprive the plaintiff of his civil rights. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Additionally, the plaintiff must demonstrate that the deprivation was motivated by some racial or other class-based, discriminatory animus for the conspirators' conduct and the plaintiff must be a member of the discriminated class. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). Finally, to survive a motion to dismiss, plaintiffs alleging a conspiracy to deprive them of their constitutional rights must "include in their complaint non-conclusory allegations containing evidence of unlawful intent or face dismissal prior to the taking of discovery." *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997).

In the present case, Plaintiff has failed to allege facts sufficient to support a claim for conspiracy. First, Plaintiff failed to allege a meeting of the minds between Richter and Paul. Plaintiff merely states that both Richter and Paul were on duty when he was attacked, but he is silent as to any specific facts regarding a meeting of the minds between Richter and Paul which brought about the alleged constitutional deprivation. Additionally, the Second Amended Complaint and Opposition are completely devoid of any allegation of racial or discriminatory animus on the part of Richter and Paul as a basis for the alleged attack. Plaintiff only states that Paul "assisted in a conspiracy to cause serious bodily harm to Plaintiff, then tried to cover it up by

AO 72
(Rev. 8/82)

threatening Plaintiff," and that Richter "assisted in the brutal beating of an inmate placed on 'Strict Protective Custody,' then conspired to cover it up." (Compl. at 2.) These conclusory allegations are the type that are insufficient to state a claim for conspiracy to deprive one of his civil rights. For these reasons, Plaintiff's conspiracy claim is dismissed.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Strike (#56) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss (#33) is GRANTED in part and DENIED in part as follows:

- As to Plaintiff's Eighth Amendment claims:
    - DENIED as to Defendants Richter, Paul, and Gonzales;
    - GRANTED as to Defendants Young and Robertson;
- GRANTED as to Plaintiff's Fifth and Fourteenth Amendment claims against Richter and Paul.

Dated:  March 21, 2007.

_____
ROGER L. HUNT
Chief United States District Judge