# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | | |
|---|---|---|
| GEORGE TYRONE DUNLAP, JR., | ) | |
| | ) | |
| Plaintiff(s), | ) | 2:06-CV-0800-RLH-RJJ |
| | ) | |
| vs. | ) | **O R D E R** |
| | ) | (Motion for Summary Judgment–#88) |
| OFFICER J. RICHTER, *et al.,* | ) | |
| | ) | |
| Defendant(s). | ) | |

Before the Court is Defendants Richter, Paul, Gonzales and Rogan's **Motion for Summary Judgment**[1] (#88, filed August 29, 2007). Plaintiff, appearing *pro se*, filed an Opposition (#91) and then a document unusually entitled Plaintiff's Motion of Facts Supporting Plaintiff's Motion of Opposition (#92).[2] Defendants filed their Reply (#93), which was followed by a document by Plaintiff entitled Plaintiff's Motion of Facts–II In Support of "Opposition Motion." (#96), which the Court construes to be a response to Defendants' Reply. The Court has reviewed this document, although it is not authorized by either the Federal Rules of Civil Procedure or the Local Rules of the District of Nevada, and finds that it primarily reiterates the points and facts referred to in the other documents.

---

[1] Defendants' title of the motion contains a misspelling, which the Court will ignore, rather than perpetuate.

[2] The Court presumes Plaintiff meant this document to be a statement of facts in support of his opposition, and will consider it as such.

1

1  The Court will grant the motion as to Defendants Rogan and Swiekart, but deny the
2  motion as to Defendants Richter, Paul and Gonzales.

3  LEGAL STANDARD FOR SUMMARY JUDGMENT

4  Pursuant to Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings,
5  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
6  show that there is no genuine issue as to any material fact and that the moving party is entitled to a
7  judgment as a matter of law."

8  The moving party for summary judgment has the initial burden of showing the
9  absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970);
10  *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the movant's burden is met
11  by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at
12  trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a
13  genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the factual
14  context makes the respondent's claim implausible, that party must come forward with more
15  persuasive evidence that would otherwise be necessary to show that there is a genuine issue for trial.
16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio
17  Corp.*, 475 U.S. 574, 586-87 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818
18  F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

19  If the party seeking summary judgment meets its burden, then summary judgment
20  will be granted unless there is significant probative evidence tending to support the opponent's legal
21  theory. *First National Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Commodity
22  Futures Trading Commission v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979). Parties seeking to
23  defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits
24  or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are
25  insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440
26  U.S. 981 (1979). Likewise, "legal memoranda and oral argument are not evidence and they cannot

by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd.*, 585 F.2d at 952.

A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305-06 (9th Cir. 1982).

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1297, 1298 (9th Cir. 1982).

Defendants have not met their initial burden.

## DISCUSSION

### I.  DEFENDANTS ROGAN AND SWIEKART

Although the motion was not brought on his behalf, and the caption of the motion fails to even list him, the motion also argues for summary judgment in favor of David Swiekart. Although named in his Second Amended Complaint, Plaintiff Dunlap admitted in his deposition that he has no claims against Captain Rogan or David Swiekart. Dunlap Deposition page 110, line 20–page 111, line 7. This admission is confirmed by the total lack of any arguments or claims, in Plaintiff's Opposition or the two statements of facts filed in opposition to the motion for summary judgment, that Rogan or Swiekart played any part in the attack on Plaintiff Dunlap or the failure to protect him from other inmates.

To keep Rogan or Swiekart in this litigation would serve no purpose and only create confusion. Accordingly, summary judgment lies in their favor.

### II.  MUNICIPAL LIABILITY

Counsel for Defendants wastes precious time and effort arguing that there is no municipal liability against the Las Vegas Metropolitan Police Department (Metro) pursuant to

1  *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978) (which counsel fails to cite properly).  As he
2  acknowledges, Metro is not named as a defendant.  Furthermore, there is no claim in the Second
3  Amended Complaint against Metro or its policies. The claims are directed against the actions of
4  specific officers.  Finally, (former) Sheriff Young, even if there was a claim that he acted in his
5  official capacity, has been dismissed from this case.

6  Arguments about the requirements for municipal liability and whether they have been
7  met, and arguments about whether there can be punitive damages assessed against a municipality
8  have been a waste of the Court's time and a distraction from the real issues at bar.

9  III.  DEFENDANTS RICHTER, PAUL AND GONZALES

10  Local Rule 56-1 requires that with any motion for summary judgment, the movant
11  shall include a "concise statement setting forth each fact material to the disposition of the motion
12  which the party claims is or is not genuinely in issue. . . ."  Defendants have failed to provide a
13  concise statement identifying which facts are uncontested.

14  Even Plaintiff, acting *pro se*, made an effort to provide a statement (actually two
15  statements) of facts that he felt were contested.

16  While the Court might overlook the failure to formally identify such a statement of
17  uncontested facts, were they woven into the narrative of the motion, Defendants failed to do even
18  that.  Instead, the motion launches into an argument trying to discredit Plaintiff's claims, often by
19  reference to irrelevant "admissions."  There is no chronology of critical events to provide perspec-
20  tive.  Dates and events are related in a haphazard fashion as various arguments are made.

21  For example, much is made of the fact that Plaintiff claims that his safety and life
22  were being threatened because of the fact that he was to testify before the Grand Jury, but that
23  Plaintiff testified that he actually testified before the Grand Jury after he complained of those
24  threats. The likelihood that the threats were made to dissuade him from testifying does not seem to
25  occur to Defendants.

26  / / / /

4

Much is made of the fact that Plaintiff did not identify the specific person who made the threats, nor identify specifically the name of the person who actually attacked him. The fact that there was a number of people, members of the Rolling 60s Crips gang, who were making the threats, and that Plaintiff did not know their names, is ignored by Defendants' repeated arguments suggesting that Plaintiff is required to identify by name the person who is going to attack him before Defendants have an obligation to ensure his safety.

Defendants argue that Plaintiff "admitted" that at first, the other inmates thought it was Plaintiff's cellmate who was going to testify against a member of the gang. That this misunderstanding was corrected by the subsequent threats against Plaintiff and the eventual attack on him does not deter Defendants from arguing the significance of such "admissions."

Defendants expend much effort arguing that initially the threats against Plaintiff's safety came not from the fact that he was going to testify against a gang member charged with a double murder, but because of the charges of sexual molestation against Plaintiff. It is as though there is a belief that Defendants' obligations vary depending on the reasons for the threats, or that the initial reasons for the threats somehow diminished Defendants' obligations to protect Plaintiff from threats arising out of his expected testimony in the double murder.

Even Plaintiff succumbs to the temptation to chase arguments that are irrelevant to the motion, making claims that the Defendants are working together to make misrepresentations to the Court and asking the Court to make factual determinations against Defendants' activities which have no bearing on the claims remaining in this case.

There are a lot of extraneous facts which, while relevant, are not material to deciding this motion. The relevant events occurred while Plaintiff was in the Clark County Detention Center. He had pleaded guilty and was awaiting sentencing, which occurred shortly after the attack in question. The essential time line of the claims and defenses are as follows:

In September 2005 inmate Flowers threatened Dunlap if he did not testify for Flowers. Flowers was charged with, among other things, a double murder.

1     On October 6, 2005, Plaintiff met with Defendant Gonzales and advised him of the
2 threats being made directly to him or which he overheard others making toward him, asking to be
3 moved to a different facility or unit.  Plaintiff claims that Gonzales persuaded him to return to the
4 unit to gather information on Flowers.
5     On or about October 7, 2005, there appears to have been a transfer, but it is not clear
6 what it entailed.  However, there appears to be a dispute about whether Plaintiff should have been
7 placed in a disciplinary housing unit (where the gang members were placed) or a protective custody
8 unit.
9     On October 10, 2005, inmate Townsend came to the door of Plaintiff's cell and
10 threatened him that he would kill Plaintiff.  Townsend was one of a number of Rolling 60s Crips
11 gang members who were in the unit and were the ones who allegedly were threatening Plaintiff.
12     On October 11 and/or 12, 2005, Plaintiff told Defendants Richter and Paul of the
13 threats and pleaded to be moved.
14     On October 13, 2005, Plaintiff, allegedly shaking and crying, told Officer Lipsci of
15 the threats and was assured that he would be protected.  That day he testified before the Grand Jury
16 regarding (and against) Flowers, and was again threatened.
17     On October 17, 2005, Plaintiff was attacked by Townsend who beat him with a
18 broom handle and stabbed him with homemade shives.  Plaintiff was housed alone in a cell and was
19 supposedly on "walk alone" and "exercise alone" status.  He claims that Defendant Richter came to
20 his cell and asked if he were ready to exercise and Dunlap said 'yes.'  Richter then returned to the
21 control room and unlocked the cell door, whereupon Townsend, who had been released from his
22 cell, came into Plaintiff Dunlap's cell and attacked him.  Richter claims that Townsend had asked if
23 he could exercise with Dunlap and Richter released Townsend and brought him to Dunlap's cell and
24 told Plaintiff that Townsend wanted to exercise with him and asked if that was OK and Dunlap said,
25 "yes." So Richter unlocked Plaintiff's door and the next thing Richter knew the two of them were
26 in the open area circling each other with Plaintiff holding a broom handle.

6

1  In contradiction of Richter's story, his Incident Report says that he saw, from the
2  control room, Townsend standing in the doorway of Plaintiff's cell holding a broom handle.  This
3  had to have occurred before the attack.  Also, Rickter claims that he "negligently" failed to look at a
4  third document, although he read two others, regarding the restrictions on Plaintiff's activities with
5  other inmates, and that was why he did not know Plaintiff was on "walk alone" and "exercise alone"
6  status.

7  The obligations of Defendants and the burden of proof on Plaintiff are adequately
8  described in a case cited by both sides of this dispute, *Farmer v. Brennan*, 511 U.S. 825 (1994).[3]
9  This case has been cited and interpreted by the Ninth Circuit and other courts of appeal, but the
10 relevant law discussed therein has not changed.

11 *Farmer v. Brennan*, involved a suit by a transsexual prisoner against prison officials
12 for "deliberate indifference" by placing the prisoner in the general prison population, thus failing to
13 keep him from harm allegedly inflicted by other inmates.  Justice Souter, writing for the Court, held
14 that prison officials may be held liable under Eighth Amendment for denying humane conditions of
15 confinement only if they know that inmates face substantial risk of serious harm and disregard that
16 risk by failing to take reasonable measures to abate it.  The case was remanded to determine whether
17 prison officials would have liability, under the foregoing standard, for not preventing harm allegedly
18 experienced by the plaintiff.

19 "A prison official's 'deliberate indifference' to a substantial risk of serious harm to
20 an inmate violates the Eight Amendment. [citations omitted]   "'[D]eliberate indifference,' . . .
21 requir[es] a showing that the official was subjectively aware of the risk." *Id*. at 828.

22 The Eighth Amendment requires prison officials to "'take reasonable measures to

---

[3] Defendants' counsel goes to great length to cite and analyze cases involving officers' threats against an inmate in a argument that mere threats (by officers) do not pose a safety risk. The Court has disregarded those cases and will not bother to discuss them here.

1  guarantee the safety of the inmates.' *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984) [other

2  citations omitted]." "[P]rison officials have a duty . . . to protect prisoners from violence at the

3  hands of other prisoners." "[Gratuitously allowing the beating or rape of one prisoner by another

4  serves no 'legitimate penological objectiv[e]. *Hudson v. Palmer* 468 U.S. at 548." *Id*. at 833.

5        "[A]prison official cannot be found liable under the Eighth Amendment for denying

6  an inmate humane conditions of confinement unless the official knows of and disregards an

7  excessive risk to inmate health or safety." *Id.* at 837. Subjective recklessness is the standard for

8  determining "deliberate indifference under the Eighth Amendment." *Id*. at 839-840.

9        "Under the test we adopt today, an Eighth Amendment claimant need not show that a

10  prison official acted or failed to act believing that harm actually would befall an inmate; it is enough

11  that the official acted or failed to act despite his knowledge of a substantial *risk* of serious harm."

12  *Id.* at 842 (Emphasis added). "Whether a prison official had the requisite knowledge of a substantial

13  risk *is a question of fact* subject to demonstration in the usual ways, including inference from

14  circumstantial evidence. . . . and a factfinder may conclude that a prison official knew of a substan-

15  tial risk from the very fact that the risk was obvious." *Id*. (Emphasis added). "[I]f an Eighth

16  Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was

17  'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and

18  the circumstances suggest that the defendant-official being sued had been exposed to information

19  concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to

20  permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Id.* at 842-

21  843.

22        "Nor may a prison official escape liability for deliberate indifference by showing

23  that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the

24  complainant was especially likely to be assaulted by the specific prisoner who eventually committed

25  the assault. . . . and it does not matter whether the risk comes from a single source or multiple

26  sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons

personal to him or because all prisoners in his situation face such a risk." *Id*. at 843.

Faced with the circumstances of this case, and the language of *Farmers v. Brennan*, it is clear that there remain material issues of fact which cannot be resolved by a motion for summary judgment.

Defendants' feeble attack on the incident reports of the Defendants, on the basis that Plaintiff failed to authenticate them, is not worthy of consideration. They constitute admissions by the Defendants. Plaintiff is in no position to authenticate documents prepared by Defendants. And the Defendants do not deny their authenticity.

Those documents, supported by Plaintiff's own testimony, much of which was introduced by Defendants through Plaintiff's deposition, provide sufficient evidence of significant factual disputes. Who will be believed at trial, or what weight is to be given to conflicting evidence is not for this Court to decide in the context of a motion for summary judgment. Those questions of fact must await trial to determine the merits of Plaintiff's case.

By way of example the Court notes the following issues of fact which remain to be decided. This list is not exhaustive, but only by way of example.

1. Whether either of the Defendants acted with deliberate indifference or were simply negligent.
2. Whether Defendants were warned or apprised of the danger to Plaintiff and whether they disregarded those warnings.
3. Whether Plaintiff's concerns were legitimate and whether Defendants' responses to concerns were appropriate and reasonable.
4. Whether Townsend requested to exercise with Plaintiff and whether Plaintiff was told of that and agreed to it.
5. Whether permitting Townsend access to Plaintiff's cell, when Plaintiff feared for his safety by other inmates (including Townsend), was an act of deliberate indifference toward Plaintiff's safety.

6. Whether measures taken by Defendants to insure Plaintiff's safety were reasonable.

7. Whether and why Defendants believed their conduct was lawful.

8. Whether Richter's alleged act of failing to check a report was negligent or intentional, or merely an excuse for what he did.

9. Whether Defendants, or any of them, saw Townsend enter Plaintiff's cell with a broom or mop handle prior to the attack, holding it like a club.

10. Whether Gonzales acted out of deliberate indifference when he sent Plaintiff back into the unit to gather information, despite Plaintiff's fears.

11. Whether Defendants knew, based on the nature of the charges against Plaintiff, that he was at a high risk of attack by other inmates.

12. Whether Defendants, or any of them, personally and physically threatened Plaintiff if he filed a complaint against them.

13. Whether Richter knew of Plaintiff's "walk alone" or "exercise alone" status on the day of the attack.

14. Whether Defendants knew Plaintiff was going to–or had–testified against a gang leader charged with a double murder.

Defendants' claim they are immune from suit because a constitutional violation did not occur unless it can be established that they knew of and disregarded an excessive risk of harm, that the risk of harm was excessive, and their conduct was not mere negligence. Such a defense is clearly, in this instance, driven by the facts and the factual determinations to be made by the trier of fact. These are precisely the material factual issues identified above, and for that reason summary judgment cannot be granted to Defendants Richter, Paul and Gonzales, even on the basis of qualified immunity.

/ / / /

/ / / /

/ / / /

IV. INJUNCTIVE COMPENSATION

Plaintiff seeks "injunctive compensations" in his request for relief. The phrase is mutually exclusive. One cannot get compensation as injunctive relief, at least in this instance. Plaintiff is no longer at the facility in which this cause of action arose, nor is he under the control of the Defendants. Accordingly, injunctive relief will not lie. Although Defendants have not addressed this issue, for the foregoing reasons the Court will *sua sponte* dismiss the claim for "injunctive compensations," for the sake of judicial economy and to clarify the issues to be tried in this case.

IT IS THEREFORE ORDERED that Defendants' **Motion for Summary Judgment** (#88) is granted in part and denied in part as follows:

(1) The motion is granted as to Defendants Rogan and Swiekart, and the case is dismissed as to them.

(2) The motion is denied as to Defendants Richter, Paul and Gonzales.

IT IS FURTHER ORDERED that Plaintiff's claim for "injunctive compensations" is dismissed.

Dated: January 8, 2008.

_____
Roger L. Hunt
Chief United States District Judge